(C. D. 1217)

STETSON GLOVE COMPANY *v.* UNITED STATES

United States Customs Court, Second Division

(Decided March 2, 1950)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*David N. Edelstein*, Assistant Attorney General (*John J. McDermott* and *Joseph E. Weil*, special attorneys), for the defendant.

Before LAWRENCE and RAO, Judges; FORD, J., not participating

Rao, Judge: The protests, enumerated in the schedule of protests annexed hereto and made a part hereof, were lodged against the collector's assessment of duty upon certain cotton fabric gloves at the rate of 60 per centum ad valorem pursuant to the provisions of paragraph 915 of the Tariff Act of 1930, as gloves made of fabric knit on a warp-knitting machine, plus the additional assessment of 10 cents per pound provided for in paragraph 924 of said act. It was claimed that the merchandise is dutiable at only 50 per centum ad valorem under said paragraph 915, as gloves made of fabric knit on other than a warp-knitting machine.

During the course of the trial of these protests, counsel for the plaintiff abandoned its claim that certain of the gloves involved herein were made of fabric knit on other than a warp-knitting machine, and hence acceded to the collector's classification with respect thereto. This action amounted to a virtual abandonment of several of the protests covered by this proceeding, to wit, protests 889481–G/128–37; 899053–G/147–37; and 89701–K/18128–34. Accordingly, said protests are hereby dismissed. We will have occasion subsequently to refer to this concession on the part of the plaintiff.

Insofar as the remainder of the protests are concerned, plaintiff predicated its claim of dutiability of the instant merchandise at the 50 per centum rate provided for in paragraph 915 of the Tariff Act of 1930, solely upon its alleged similarity with the gloves which were the subject of decision in *United States* v. *Julius Kayser & Co.*, 33 C. C. P. A. (Customs) 179, C. A. D. 333, wherein it was held that gloves made of a fabric knit on a machine known as a Simplex machine were gloves which were made of a fabric knit on other than a warp-knitting machine. It was therefore sought to have the record in that case admitted in evidence herein.

Two witnesses were called to testify on behalf of the plaintiff. The first of these was Mr. Joseph A. Singler, the treasurer and buyer of plaintiff company, who had personally ordered all of the merchandise covered by the various invoices before the court, and had seen and inspected it after its arrival into the United States. Although a considerable period of time had elapsed between the date of importation and the time of trial, the witness stated, on direct examination, that he was able to determine what merchandise was included therein, by the description of the merchandise and the style numbers appearing on the invoices. He testified that he had examined exhibit 1 in protest 944308–G, which was the subject of decision by the United States Court of Customs and Patent Appeals in the case of *United States* v. *Julius Kayser & Co., supra*; that he was familiar with that line of merchandise; and that the items on the invoices before the court, listed in the third column of exhibit 1 in the instant case, were

made of cloth which was similar in all material respects to exhibit 1 in said C. A. D. 333.

On cross-examination, this witness testified that he was familiar with the manufacture of cloth such as was used to make exhibit 1 in protest 944308–G; and that he had observed the machine upon which said cloth was made. When asked to describe the machine, he could state only that it had two bars of needles. He did not know what type of needles was in the machine nor whether the needles operated in a vertical, horizontal, or oblique direction. In fact, he was totally unfamiliar with the technical phases of the manufacture of the material. He stated, however, that he was familiar with certain fabrics known as Atlas cloth, Duplex cloth, and Simplex cloth; that Atlas cloth is a single-woven cotton cloth; Simplex cloth is a double-woven cloth; and Duplex cloth consists of two cloths pasted together. When he wished to determine whether a cloth was Duplex or Simplex, he would take the cloth and work it to separate the two cloths pasted together. If they came apart, it was Duplex cloth. However, he did not test every pair of gloves in the instant importation to ascertain whether it was made of Duplex or Simplex cloth. As to how, then, he was able to say that the merchandise was similar in all material respects to exhibit 1 in protest 944308–G, the witness made the following comments:

A. When the invoices and the merchandise arrived we inspected the merchandise—it came down here to the Customs—and discussed the matter with Mr. Hochberg, who was in charge at that time, and where we took the position that it was Simplex cloth, and he said it was not, and we protested that particular entry.

By Mr. Weil:

X Q. He said that it was not Simplex cloth?—A. That is right.

X Q. Or did he say that it was made on a warp-knitting machine?—A. He did in some instances, yes, sir.

X Q. And as to the item numbers in the cases which are enumerated on Exhibit 1 in this case he said it was not Simplex cloth?—A. That is right.

X Q. I show you Protest 889481–G, containing entry number 585, and direct your attention to a page of the invoice referring to case number 2867. (Handing papers to the witness, who examined them.)

X Q. Do you see that, sir?—A. Yes, sir.

X Q. And that is one you have listed as an item same in all material respects to C. A. D. 333 on Exhibit 1, is that right?—A. That is right.

X Q. How was that merchandise invoiced on that particular entry?—A. That it was made on a warp-knitting machine.

X Q. I see. Now I show you Protest 899053–G, and direct your attention to case number 2871 in entry 641, and ask you how was the merchandise invoiced in that case? (Handing papers to the witness, who examined them.)—A. On a warp-knitting machine.

X Q. It says "Made on a warp-knitting machine"?—A. Yes, warp-knitting machine.

X Q. Now I direct your attention to Protest 980137–G, entry 410, and direct your attention to cases numbered 7861, 7862, 1038 and 1039, and ask you how

was the merchandise invoiced in those cases? (Handing papers to the witness, who examined them.)—A. They are listed here as "ladies fancy cotton fabric gloves."

X Q. Right. Now aside from the fact that some of these may have been ladies' gloves, some men's gloves and some children's gloves, and aside from the fact that they may have different sizes or be different colors or a different style, is it your contention and claim that this merchandise consists of the same fabric in all of the case numbers which are contained in Exhibit 1?—A. No; they are finer yarns used on different cloths.

X Q. What is that?—A. There are finer yarns used on different cloths.

X Q. But whether there may be different yarns or whether the sex—whether it is male or female or child—or color or size or design, is it your contention that aside from those factors that the material used or the cloth used was made in the same way and as in all of these cases enumerated in Exhibit 1?—A. Yes, sir.

X Q. Irrespective of whether invoiced as made on a warp-knitting machine or otherwise?—A. Yes, sir.

At this point it is pertinent to note the witness' certainty that, irrespective of the invoice descriptions, whether as "made on a warp-knitting machine" or otherwise, all of the items listed in column three of exhibit 1 were made in the same way and were the same in all material respects as exhibit 1 in C. A. D. 333. Specific items from various of the invoices covered by the protests before the court were called to his attention, and he confirmed that fact, as to those items particularly. Nevertheless, and at a subsequent hearing of the instant case, counsel for the plaintiff abandoned several of those items with the following statement:

The witness from the importing concern is the only person with this concern who has knowledge of the facts. Unfortunately, he is now suffering from a serious heart ailment. He has been advised by his doctor not to take any action which might excite or tire him, also that he might seriously injure his health if he appeared as a witness again in this case. I have, however, gone carefully over the invoices with Mr. Singler, and he has picked out in my presence, those claimed items on which he states a difference of opinion existed between him and the examiner about whether or not the gloves were made of simplex fabric as well as all claimed articles which were invoiced as being made of fabric produced on warp-knit machines. These items are identified on Exhibit 1 as follows, and I hereby abandon all claim as to these following specified items: Protest 851336, entry 114, case 2199, Protest 889480, entry 441, items 2020 and 8549, Protest 889481, entry 585, items in case 2867; items in case 2867, our abandonment of this item results in a virtual abandonment of this protest. Protest 899053, entry 3641, items in case 2871, our abandonment in this item results in a virtual abandonment of this protest. Protest 89701, entry 203, item 8800, in case 441. This abandonment results in a virtual abandonment of the protest.

Thus it would appear that the witness' original assertion that all of the items listed on exhibit 1 in the instant case are the same in all material respects as exhibit 1 in protest 944308–G was without foundation in fact, and to that extent the weight of his testimony has been lessened.

In fact, this witness was unable to give the visual characteristics of Simplex cloth. Aside from the blanket statement that Simplex cloth is double-woven cloth, and that he could distinguish it by feeling it, he could give no further description of the cloth. He did not know that Simplex cloth has two right faces, nor did he examine the imported merchandise to ascertain whether the gloves which he claimed to be of a fabric similar to those involved in C. A. D. 333 had two right faces. All he knew was that Simplex cloth was a thicker material than Atlas cloth.

On re-direct examination, the witness, upon being queried about item number 2083, entry number 508, covered by protest 839241–G, stated that this item number was made of a fabric knit on a Simplex machine, and that it was the same fabric as exhibit 1 in C. A. D. 333; that cases 8114 and 8115, the subject of protest 851336–G, did not differ from exhibit 1 in C. A. D. 333. He also testified that item 2199 did not differ from said exhibit 1 (item 2199, covered by protest 851336–G, is one of the items with respect to which counsel for the plaintiff subsequently abandoned all claims for the reason that either there was a dispute between plaintiff and the examiner as to whether the gloves were made of Simplex fabric or the gloves were invoiced as being made of fabric produced on warp-knitting machines); and that items 8513, 8514, 8515, and 8024 contained gloves of the same material.

On re-cross-examination, with respect to these particular items, covered by protest 851336–G, the witness stated that despite the lapse of time between the importation of this merchandise, and the trial, he could recall the material contained in about 75 per centum of the gloves imported at that time. He did not, however, examine every pair of gloves imported; nor in fact could he recall whether he examined the gloves covered by protest 851336–G. Although he refused to state if he recalled whether the gloves had two right faces or not, the witness admitted that the only way he could judge the similarity of the cloth with exhibit 1 in the *Kayser* case, *supra*, was by the thickness thereof.

Re-direct examination once again elicited from the witness that he was familiar with gloves made of a fabric knit on a Simplex machine; that he had been familiar with such fabric since about 1939; that he imported about 100,000 dozen pairs of gloves a year, of which some were Simplex; that he recognized a Simplex cloth glove by a physical examination of it; that he could not with ease explain the differences among Atlas, Duplex, and Simplex cloths, but that he could readily identify one from the other; that the material of exhibit 1 in C. A. D. 333 was Simplex cloth; that the gloves in the cases in protests 851336–G and 839241–G about which he had testified were made of the same type of cloth.

On re-cross-examination, the witness' answers followed the same pattern as his previous responses to Government counsel's questions. He said that Simplex cloth had definite characteristics which could be discerned by looking at it and feeling it. If he had any doubt as to whether cloth was Duplex cloth, he would work the cloth until the paste loosened and he could pull it apart. But he could not explain how he could tell the difference visually between an Atlas cloth and a Simplex cloth.

Upon being re-questioned by his own attorney, the witness stated that he had been handling gloves made of cloth made on a Simplex machine since 1919; that Atlas cloth is a single-woven cloth; Simplex cloth is double-woven at one time; and that Duplex cloth is two cloths pasted together. When he sought to determine whether or not the merchandise he had imported was of a fabric made on a Simplex machine, he resorted principally to the style numbers under which the merchandise was imported; that he could identify the style numbers from different manufacturers; that in some instances, as for example, in the case of men's gloves, the style numbers were the same for years; that Simplex cloth was the most expensive cloth, Atlas, the cheapest; that he relied on price in some instances to determine what cloth was Simplex cloth; and that some manufacturers made practically nothing but Simplex cloth gloves and he used that information in determining which of the gloves he imported were made of the Simplex cloth. The witness then stated that he felt sure that he did not list anything on exhibit 1 in the instant case which he did not conscientiously think was Simplex cloth.

On re-cross-examination, however, the witness stated that he could not recall, without a list, which manufacturers made only Simplex cloth or from whom he purchased only Simplex gloves. On being questioned specifically concerning various manufacturers who were called to his attention by name, he knew the type of cloth made by some of the firms mentioned but could not state whether he had purchased Simplex cloth from any individual one. He could not tell if there was anything on the invoices, other than the style numbers, which would indicate whether the gloves were made of Simplex, Duplex, or Atlas cloths. The witness stated finally that he would consider the fabric of the gloves to be the same whether or not the invoice contained the description "made on warp-knitting machine."

On this state of the record, Judge Cline before whom this trial proceeded, denied the motion of the plaintiff to incorporate the record in the case of *United States* v. *Julius Kayser & Co.*, 33 C. C. P. A. (Customs) 179, C. A. D. 333, Government counsel having objected thereto, and the case was continued.

Subsequently, counsel for plaintiff, after abandoning the claim with respect to certain of the items listed on exhibit 1 in the instant case, called Mr. Edward Hochberg, the examiner who passed upon

the various items covered by the invoices before the court. This witness stated that during his experience as a Government examiner he had passed upon many items of gloves made of fabric produced on Simplex machines. If an item on an invoice appeared as a "Simplex glove" and he disagreed with that description, he would strike out the word "Simplex" and insert a word more accurately describing the merchandise, such as "Duplex." If he did not strike out the word "Simplex," it would signify that the invoice description was correct. The witness then identified exhibit 1 in protest 944308–G as a glove made of a Simplex fabric.

On cross-examination, the witness stated that exhibit 1 in C. A. D. 333 was made on a machine which turned out a glove made of fabric knit on a warp-knitting machine. He stated further that exhibit 1 in C. A. D. 333 was, based on his experience, made on a warp-knitting machine.

Counsel for plaintiff then renewed his motion to incorporate herein the record in the case of *United States* v. *Julius Kayser & Co., supra,* and counsel for the Government reasserted his objection thereto. In view of the fact that a substantial portion of the testimony was taken before another member of this court, decision on the motion was reserved.

Rule 20 of the Rules of the United States Customs Court, effective November 1, 1949, provides, in part, as follows:

When a case is under consideration which involves questions of law and fact substantially the same in character as were involved in another case which has been previously decided, or tried and submitted to the court for decision, the record, or any part thereof, in such previous case may, within the discretion of the court, be admitted in evidence in the pending case upon motion of either party: * * *

The ultimate decision to admit the previous record in evidence is thus left solely within the discretion of the court. *United States* v. *Great Pacific Co., Shui Tai & Co.,* 23 C. C. P. A. (Customs) 319, T. D. 48192. While such discretion may not be whimsically or capriciously exercised, if, in the opinion of the court, the questions of law and fact are not substantially the same in character as were involved in the decided case, the motion to incorporate must be denied.

The issue in the *Kayser* case, *supra,* concerned itself with a highly technical inquiry into the nature and character of a machine which produced a fabric which has come to be known as Simplex cloth, to the end that it might be determined whether such machine was a warp-knitting machine, or something other than a warp-knitting machine. The issue was eventually resolved in favor of the importer, the court holding that the Simplex machine was not a warp-knitting machine. In that case, it was agreed, by the respective parties that the merchandise involved therein consisted of gloves made of a fabric

knit on a Simplex machine, and that exhibit 1 was a glove fashioned from that fabric.

We are asked here to apply the doctrine of the *Kayser* case, *supra*, without any convincing proof that the merchandise covered by the invoices presently before the court was composed of a fabric similar in all material respects to that of the merchandise involved in that case. To be sure, plaintiff's principal witness categorically asserted, not once but on four separate occasions, as he was examined and re-examined by his counsel, that the merchandise contained in the cases listed in exhibit 1 in the instant case, was made of a Simplex fabric, the same in all material respects as the fabric of the gloves involved in the decided case. But in each instance, on being subjected to cross-examination, he could not substantiate that statement or demonstrate his ability to identify a Simplex fabric. He had no sample of the imported merchandise. Not only did he state that he was unable to describe the distinctive and distinguishing characteristics of the Simplex fabric, but also did he admit that he had not examined the imported gloves with those distinctive features in mind.

The witness' belief in the similarity of the merchandise with that involved in the *Kayser* case, *supra*, was predicated almost entirely upon his identification of the style numbers appearing on the invoices. However, his recollections as to which manufacturers sold him Simplex gloves and which sold him gloves made of other fabrics were none too clear.

The fact, too, of the abandonment of the protest claims with respect to certain items which were originally included in exhibit 1, herein, and as to which the witness testified in the first hearing of his certainty that such items contained gloves made of Simplex fabric, likewise, militates against the acceptance of the witness' unsubstantiated statement that the merchandise for which the plaintiff claimed the lower rate of duty was the same in all material respects as that involved in the decided case.

The additional testimony of the examiner who passed the instant merchandise provides no cure for the insufficiency of the evidence herein to support the motion under consideration. His testimony was general in scope, and no attempt was made to establish through him that the gloves involved in the instant case were the same or similar to those involved in the *Kayser* case, *supra*.

In view of the foregoing, the motion to incorporate the record in *United States*, v. *Julius Kayser & Co.*, 33 C. C. P. A. (Customs) 179, C. A. D. 333, is hereby denied.

There being no evidence herein rebutting the presumption of correctness inherent in the decision of the collector, those protests which have not been heretofore dismissed are overruled.

Judgment will be entered accordingly.